RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Attorneys for Defendant
Chicago Title Insurance Company

| | |
|---|---|
| SKY LAND INVESTMENTS, LLC, A Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE INSURANCE COMPANY, A Missouri Domiciled Insurer,<br><br>Defendant. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Case Action No. 07-5844 (KSH)<br><br>Hon. Katharine S. Hayden, U.S.D.J.<br>Hon. Patty Shwartz, U.S.M.J.<br><br>**DECLARATION OF**<br>**MICHAEL R. O'DONNELL, ESQ.** |

1.  I, MICHAEL R. O'DONNELL, am an attorney licensed to practice law in the State of New Jersey, and am a member of the law firm of Riker, Danzig, Scherer, Hyland & Perretti LLP, attorneys for Chicago Title Insurance Company ("Chicago Title"). I have been the partner responsible for the coverage investigation of the title claims submitted by Sky Land Investment Company, LLC ("Plaintiff") related to a title policy given on a mortgage (the "Mortgage") assigned to Plaintiff on the home of Lorraine Mocco at 41-81 Clark Road, Bernardsville, New Jersey (the "Property").

2.  This matter can be traced back to November 2006, when our firm became aware that Peter and Lorraine Mocco ("Mocco") were challenging title to certain properties conveyed to SWJ Holdings, LLC ("SWJ") in a Connecticut bankruptcy and that EMP Whole Loan I, LLC ("EMP") was stating that it had not sold,

1

assigned or transferred its interest in its mortgage in the Property. Plaintiff's Mortgage assignment had ultimately been obtained from SWJ.

   3. I forwarded copies of relevant filings, correspondence, and orders concerning these matters to ascertain whether Plaintiff would be submitting a claim on the Policy or requesting that Chicago Title take any action and to respond to the request of Plaintiff's principal, Greg Crane, asking Chicago Title to provide a title policy to a potential buyer of the Mortgage. (See Email from Michael R. O'Donnell, Esq. dated Dec. 14, 2007 with attachments, attached hereto as Exhibit A; Letter from Michael R. O'Donnell, Esq. dated Dec. 15, 2007 with attachments, attached hereto as Exhibit B.)

   4. In those communications and my conversations with Mr. Crane, I informed him that he would have to advise the potential buyer of these matters. (See Exhibit A and Exhibit B.)

   5. In response to my December 14, 2007 email with attachments, Mr. Crane stated: "The attached Order and or letter from EMP do not appear to in any way effect or be binding upon the Seller Sky Land Investment, LLC's interest. The Order does not name them the Seller, nor does it pertain to or mention the 1st position mortgage that is described in the current attached title Policy." Mr. Crane further informed that he had "just received another offer today from a party that has just completed a substantial and expensive due diligence process and is now ready, willing and able to pay more that [sic] the current Buyer that the Seller is currently in escrow with." (See Email from Greg Crane dated Dec. 14, 2007, attached hereto as Exhibit C.)

   6. Mr. Crane stated that "Sky Land has made no [title] claims – yet." (See Email from Greg Crane dated Dec. 20, 2007, attached hereto as Exhibit D.)

7. I further informed Mr. Crane as to the extant matters regarding the Mortgage and his request to have Chicago Title issue an endorsement to the potential buyer of the Mortgage. (See Letter from Michael R. O'Donnell, Esq. dated Dec. 20, 2007 without attachment, attached hereto as Exhibit E.)

8. Mr. Crane responded on December 21st in part that "Chicago Title has fully made us aware of all of the litigation issues and claims addressed in your letters to Sky Land and we assume all liability for disclosures of such that may or may not be necessary or legally required to be made to the assignee." (See Email from Greg Crane dated Dec. 21, 2007 in Dec. 26, 2007 email chain, attached hereto as Exhibit F.)

9. It did not appear that Mr. Crane would so inform potential buyers, and I explained that we would "be reluctant to continue to respond to e-mails that appear to be more intent on establishing a claim rather than having your transaction closed." (See Email from Michael O'Donnell dated Dec. 22, 2007 in Dec. 26, 2007 email chain, attached hereto as Exhibit F.)

10. Mr. Crane, in response, reiterated that "[his] intentions are not to file a claim[.]" (See Email from Greg Crane dated Dec. 22, 2007 in Dec. 26, 2007 email chain, attached hereto as Exhibit F.)

11. Despite my asking Mr. Crane whether Sky Land was submitting a claim under the Policy, it did not do so in 2007.

12. Plaintiff was not named in the litigation involving the Moccos and EMP so I further asked Mr. Crane for permission to inform the Moccos and EMP of the existence of Plaintiff's recorded interest in the Mortgage to see whether it would be challenged. Mr. Crane refused to give such permission.

13. On February 8, 2007, I forwarded to Plaintiff a copy of the Notice of Motion filed by the Moccos seeking leave to file an amended complaint, which also enclosed a copy of the proposed amended complaint. (See Letter from Michael O'Donnell dated February 8, 2007 without attachments, attached hereto as Exhibit G.)

14. We heard nothing from Plaintiff again regarding any of these matters until July 2, 2007, when Plaintiff first submitted its formal title claim, seeking the Policy limit of $2 million. (See Letter from Peter Strojnik dated July 2, 2007, attached hereto as Exhibit H.)

15. Four days later, we responded to Plaintiff stating that we believed its claim was premature because it had not been named in the litigation involving the Moccos and EMP (even though its interest in the Mortgage had been recorded since November 2005) and had refused to allow Chicago Title to inform the Moccos and EMP regarding its interest in the Mortgage. We reiterated our request for permission to so contact the Moccos and EMP (but received no response). We further stated that to the extent Plaintiff nonetheless wished to pursue its claim, Chicago Title requested that Mr. Crane (and two other named principals of Plaintiff) submit to an under oath interview and that Plaintiff provide specified documents, including those concerning the debt underlying the Mortgage, the agreement by which Plaintiff obtained its interest in the Mortgage, and the consideration Plaintiff paid for the same. (See Letter from Michael O'Donnell dated July 6, 2007, attached hereto as Exhibit I.)

16. The response from Plaintiff was the filing of the instant matter against Chicago Title in the United States District Court of Arizona. Despite repeated

requests, Plaintiff, to this day, has refused to make Mr. Crane (or anyone else) available for an under oath interview as clearly required under the Policy.

17. Only after Plaintiff filed its Complaint against Chicago Title did it provide permission to contact the Moccos and EMP regarding its interest in the Mortgage. Chicago Title has done so. To my knowledge, Plaintiff has not to date been named in the litigation involving the Moccos and EMP.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 6, 2008

_____
MICHAEL R. O'DONNELL

3830411.1